# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:19-cv-61143-WPD

RENZO BARBERI,

    Plaintiff,

vs.

MASQUERADE COSTUMES INC., a Florida Profit Corporation, LEONARD B. RAPP and INDEE L. RAPP, Individuals,

    Defendant(s).
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT AND/OR TO DISMISS CASE AS MOOT [DE 25]

Plaintiff, RENZO BARBERI, by and through undersigned counsel, hereby files this Response in Opposition to Defendants' Motion for Summary Judgment and/or to Dismiss Case as Moot (hereinafter "Defendants' Motion") filed by Defendants [DE 25], and in opposition thereof states as follows:

### 1. INTRODUCTION

Plaintiff will demonstrate in the Memorandum of Law below that Defendants' arguments are without merit and that Defendants are not entitled to summary judgment. Defendants fail to meet the criteria for voluntary cessation articulated in *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir 2007), Defendants repeatedly denied liability, made modifications solely to deprive this Court of jurisdiction, and threatened and harassed Plaintiff and Plaintiff's counsel with the threat of Rule 11 sanctions despite the property continuing to have ADA violations.

Defendants could have acknowledged liability and consented to make the relief requested when they appeared in this action in May 2019- approximately five months ago. But they did not. Instead, Defendants filed a motion for extension of time seeking over a month to respond to the complaint based on the claim that Defendants would be out of the country from May 29, 2019 to July 3, 2019. [DE 12] However, on July 2, 2019 Defendants filed an Answer denying the violations [DE 14, ¶15] and sent a letter to Plaintiff threatening Plaintiff to dismiss the lawsuit, claiming that modifications have been made and that the Defendants' property is compliant with the ADA. Letter attached as Exhibit "A". Clearly, any alleged modifications were performed during the period of time that Defendants claimed to be out of the country necessitating an extension to respond to the Complaint. *See* [DE 12], [DE 14] and Exhibit "A". Defendants' behavior not only evidences that Defendants refuse to acknowledge liability, but also that Defendants' actions were purposefully and premeditatedly done to avoid acknowledging liability and in an attempt to deprive this Court of jurisdiction. And yet, upon Plaintiff's re-inspection of Defendants' property after being threatened with Rule 11 sanctions, Defendants' property was still not in compliance with the ADA. *See* Affidavit of Jon Kronillis [DE 31-1] Thereafter, Defendants went off again trying to take whatever actions were necessary to continue attempting to short circuit this litigation. Presumably, Defendants performed some more modifications (Plaintiff cannot be sure as Defendants provided absolutely no responses to interrogatories, objected to requests for production, did not provide a single document, and denied the existence of violations in their response to request for admissions[1]) which coincided with another Rule 11 threat and the filing of the instant motion for summary judgment. It is indisputable that there was absolutely no "change of heart" on the part of Defendants.

---

[1] *See* [DE 32-1]

Defendants in the instant action have been in business at the location at issue since at least 1995. Sunbiz Print-out attached hereto as Exhibit "B". Defendants have owned the property at issue since at least 2000. Deed attached hereto as Exhibit "C". It is safe to assume that Defendants have been violating the ADA and discriminating against disabled individuals for approximately twenty to twenty-five years. Allowing Defendants to avoid liability under the present circumstances completely makes the Americans with Disabilities Act a useless and voluntary law. There would be absolutely no reason for any business to comply with the ADA until such a time as they were finally caught and a lawsuit was filed against them, because they would then be able to make the necessary modifications with no consequences for their continuing discrimination and violation of the ADA. Instead of limiting the amount of ADA lawsuits and ensuring equal access for the disabled, businesses would have no incentive to comply with congressional mandates until being sued.

Additionally, on the very first page of Defendants' Motion- the second sentence- Defendants attack Plaintiff by discussing the number of cases filed by Plaintiff. Such statement has no legal bearing on the instant motion and is only meant to portray Plaintiff in a negative light. Defendants' attack is for no reason other than to improperly impugn Plaintiff's character and/or motives. The Court "must be particularly cautious about [making] credibility determinations that rely on a plaintiff's past ADA litigation." *D'Lil v. Best Western Encina Lodge & Suites,* 538 F.3d 1031, 1040 (9th Cir.2008). As the *D'Lil* court noted, "most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled .... For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Id.* (quotation omitted). *Gaylor*

3

*v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, 975 F. Supp. 2d 1374, 1387 (N.D. Ga. 2013). The United States Supreme Court, has recognized that civil rights advocates act as "private attorney generals." *See e.g., Hensley*, 461 U.S. at 445. The primary, and perhaps singular, reason public places are beginning to comply with the 20-year old obligations of the ADA is because of private enforcement suits. See, *Antoninetti v. Chipotle Mexican Grill, Inc.*, 613 F. 3d 971, 980 (9th Cir 2010), *cert. denied*, *Chipotle Mexican Grill, Inc., v. Antoninetti*, 2011 WL 645276 (79 USLW 3514, April 18, 2011). That notwithstanding, the efforts of individuals such as the Plaintiff and the attorneys who represent the disabled are "not pleasantly received," *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). As another court was far more blunt in describing the reaction as one of "vitriolic hostility." *Mallory v. Harkness*, 923 F.Supp. 1546, 1555 (S.D. Fla. 1996). As explained in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974): "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries."

It is the Defendants' blatant disregard for the ADA, *a law that is almost thirty (30) years old*, that has caused this injury to the Plaintiff and precipitated this lawsuit. As appropriately stated recently by an Honorable Judge in this District- the Court should not be concerned with why Plaintiff has filed this amount of law suits, but with why there still exists so many non-compliant public accommodations.

## II. STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1 a motion for summary judgment and the opposition thereto shall be accompanied by a statement of material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively.

In response to Defendants' Statement of Material Facts, and in compliance with the Local Rules, Plaintiff respectfully states:

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. Undisputed.
5. Undisputed.
6. Disputed. Plaintiff cannot produce admissible evidence to support as Plaintiff has been unable to obtain discovery from Defendants.[2] *See* Footnote 2.
7. Disputed. Plaintiff cannot produce admissible evidence to support as Plaintiff has been unable to obtain discovery from Defendants. *See* Footnote 2.
8. Disputed. Plaintiff cannot produce admissible evidence to support as Plaintiff has been unable to obtain discovery from Defendants. *See* Footnote 2.
9. Disputed. Plaintiff cannot produce admissible evidence to support as Plaintiff has been unable to obtain discovery from Defendants. *See* Footnote 2.
10. Disputed. Plaintiff cannot produce admissible evidence to support as Plaintiff has been unable to obtain discovery from Defendants. *See* Footnote 2.
11. Disputed. Plaintiff cannot produce admissible evidence to support as Plaintiff has been unable to obtain discovery from Defendants. *See* Footnote 2.
12. Disputed. Plaintiff cannot produce admissible evidence to support as Plaintiff has

---

[2] Defendants objected to all of Plaintiff's discovery requests, which were due August 16, 2019. As such, Plaintiff is not required to come forth with affirmative evidence when it has not had a full opportunity to conduct discovery. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

been unable to obtain discovery from Defendants. *See* Footnote 2.

### III. PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

13. On August 29, 2014 Plaintiff filed an action for injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* (hereinafter "ADA") against Defendants [DE 1].

14. Defendants have been in business at the location at issue in this action since at least 1995. Sunbiz Print-out attached hereto as Exhibit "B".

15. Defendants have owned the property at issue since at least 2000. Deed attached hereto as Exhibit "C".

16. On May 28, 2019, Defendants filed a motion for extension of time seeking over a month to respond to the complaint based on the fact that Defendants claimed to be out of the country from May 29, 2019 to July 3, 2019. [DE 12]

17. On July 2, 2019 Defendants filed an Answer to Complaint denying the violations. [DE 14, ¶15]

18. Also on July 2, 2019, Defendants sent a letter and Rule 11 motion to Plaintiff threatening Plaintiff to dismiss the lawsuit, claiming that modifications have been made and that the Defendants' property is compliant with the ADA. Letter attached as Exhibit "A".

19. The alleged modifications were allegedly performed between May 28, 2019 (the time the motion for extension was filed) and July 2, 2019 (the time the Answer was filed and the Letter was sent) which is the period of time that Defendants claimed to be out of the country. *See* [DE 12], [DE 14] and Exhibit "A".

20. Thus, Defendants claimed to have performed all of the modifications to remove the

ADA barriers during the time that Defendants sought an extension of time to file a two-page Answer because they would be out of the country. *See* [DE 12], [DE 14] and Exhibit "A".

21. Defendants' actions were solely motivated by the intent to deprive the Court of jurisdiction.

22. On July 22, 2019, after Defendants' claim that they were ADA compliant and threat of Rule 11 sanctions if Plaintiff did not dismiss the action, Plaintiff's expert re-inspected Defendants' property. *See* Statement of Jon Kronillis [DE 31-1]

23. At the time of re-inspection, Plaintiff's expert determined that Defendants' property still did not comply with the ADA. Specifically, Plaintiff's expert determined that based on the 2010 Standards for Accessible Design numerous ADA code violations remain and need to be addressed, some of the work that was performed was not done correctly and required items are missing. *See* Statement of Jon Kronillis [DE 31-1]

24. Therefore, Defendants threatened Plaintiff with a Rule 11 Motion and denied the violations in their Answer [DE 14] although violations still existed.

25. On August 15, 2019, Defendants objected to Plaintiff's discovery requests and did not provide a single document, including requested documents regarding improvements to achieve compliance with the ADA, written policies and procedures, or any architectural plans or contractor contracts for renovation of the facility. *See* Defendants' Answers to Discovery [DE 32-1]

26. In the discovery responses, Defendants yet again denied that the property has ADA barriers. *See* Response to Request for Admission No. 7 [DE 32-1]

27. On September 11, 2019, Defendants once again served Plaintiff with a Rule 11 threat

demanding Plaintiff dismiss the action at the threat of sanctions, because even though Defendants lied and served a meritless Rule 11 motion before, Defendants once again claim to be ADA compliant.

28. Defendants' every action since the filing of this action has been solely an attempt to divest this Court of jurisdiction.

## IV. OPPOSITION TO DEFENDANTS' MOTION

### A. Standard of Review

It is well established that in determining whether summary judgment is appropriate, a Court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elc. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Quite notably, the non-moving party need not prove their case dispositively at the summary judgment stage, in order to defeat such a motion. Rather, the non-movant need only demonstrate that there are material factual issues in existence, such that a reasonable fact finder could resolve such issues in favor of the non-moving party. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 911 (2nd Cir. 1986).

### B. Defendants' Arguments

Defendants' Memorandum argues erroneously that Defendants are entitled to summary judgment because the action is allegedly moot. However, there are numerous material factual issues in existence precluding judgment in Defendants' favor. On July 22, 2019, Plaintiff's expert re-inspected the property after Defendants threatened Plaintiff to dismiss the action, but found the property still non-compliant. *See* Statement of Jon Kronillis [DE 31-1]. Thus, Defendants' current compliance is a material factual issue precluding judgment in Defendants favor. Furthermore, material factual issues remain regarding whether Defendants acknowledged

8

liability, whether Defendants' remedial actions were an attempt to short circuit the litigation, and the issues of an injunction directed to maintenance and future compliance.

## Plaintiff's Claims are NOT Moot

Article III only grants federal courts judicial power to decide actual cases and controversies. *See, e.g., Utah v Evans,* 536 U.S. 452, 459 (2002). The constitutional minimum requirements for standing are: (1) the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury; (2) the injury must have been caused by the defendant's complained-of actions and (3) the plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The concept of mootness, like that of standing, arises out of Article III's limitation of federal courts' jurisdiction to "Cases" and Controversies." *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1302 (S.D. Fla. 2013) "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail,* 996 F.2d 1173, 1175 (11th Cir.1993). When a case becomes moot, it ceases to be an active "Case" or "Controvers[y]," and the court must dismiss the case for lack of jurisdiction. *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1335–36 (11th Cir.2001) (citation omitted).

Defendants' assertions that Plaintiff's claims are moot are solely based on Defendants' conclusory allegations that the violations were remedied. Note that Defendants never actually admit to the violations. Defendants do not put forth who remedied the violations, or what specific work was done. Defendants do not attach any bills, invoices or proof of payment for the work which was allegedly performed. Defendants did not provide any of these documents or information to Plaintiff in response to discovery demands. Defendants merely filed an Answer

[DE 14] denying the violations exist, and now claim that the violations no longer exist. Instead, Defendants put forth self-serving affidavits of Defendants' principals- containing no factual specifics- claiming that the violations have been remedied, and a self-serving report of an "expert" that Defendants never disclosed.

This district has recently the question of mootness in *Longhini v. West 97 Corp.,* 2016 WL 3751640 (S.D.Fla. July 13, 2016). This case is directly applicable to the instant action. In such case, the Court explained the following:

> A case may become moot under the voluntary cessation doctrine where a defendant contends that the wrongful behavior has ceased and it is "**absolutely clear** that the allegedly wrongful behavior could not reasonably be expected to recur." *U.S. v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (emphasis added). The following three factors are important in determining mootness where a private defendant has voluntarily ceased the conduct at issue: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007). Defendant faces a "formidable" and "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Accordingly, "voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id.* at 1188-89; *Cook v. Bennett*, 792 F.3d 1294, 1299 (11th Cir. 2015)….
>
> Lastly, even if Defendant demonstrated that it remedied all of the ADA violations alleged in Plaintiff's Complaint, which it has not, Defendant "has not met its 'formidable,' 'heavy burden' of meeting the Supreme Court's 'stringent' standard for mootness in a private voluntary cessation case—showing that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " *Sheely*, 505 F.3d at 1188-89 (citing *Laidlaw*, 528 U.S. at 189); D.E. 98-1 (testimony that the restroom at the Property has been open to the public for the last "decade"). Because the Court "cannot say with any degree of confidence, let alone with absolute clarity" that Defendant did not voluntarily change its conduct "simply to deprive the Court of jurisdiction," Defendant's Motion is denied. *Id.*

*Id.*

The *Longhini* case is applicable to the instant action. Defendants may have engaged in some repairs to the Property that might address some of the ADA violations. Significantly, "voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Nat'l Adver. Co. v. City of Miami,* 402 F.3d 1329, 1333 (11th Cir.2005) (per curiam). It is evident that the any remedial efforts Defendants may have taken were clearly timed as a result of this suit. It is inferable that Defendants' counsel made a motion for extension of time for the sole purpose of delay to make modifications in an attempt to divest the Court of jurisdiction. As in *Longhini*, even if Defendants have demonstrated that they remedied all of the ADA violations alleged in Plaintiff's Complaint, Defendants have "not met its 'formidable,' 'heavy burden' of meeting the Supreme Court's 'stringent' standard for mootness in a private voluntary cessation case—showing that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* Any change of its conduct by Defendants was "simply to deprive the Court of jurisdiction" and Defendants' Motion must be denied.

In *Harty v. YDB Three Lakes, L.C.,* 2010 WL 2634443 (S.D. Fla. 2010) in ruling on a motion to dismiss based on mootness, the Court found that the defendant's promises to make modifications were motivated by the litigation, and while defendant repeatedly denied liability, the modifications were to bring the premises into ADA compliance. On point, the Honorable Judge Cohn states, "Moreover, given the time and resources both the Court and the Plaintiff have been required to devote to this action—it can hardly be said that Defendant has made, or will make, the requisite changes 'voluntarily.'"; *Also see Longhini v. West Palm Plaza,* 2017 WL 4417690 (S.D. Fla. October 3, 2017) (it is clear that the controversy is not moot. Defendant has

11

not met the "formidable, heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.")

Furthermore, "the Defendants' denial of intentional noncompliance with the requirements of the ADA is unavailing, because the ADA is intended to remedy discrimination that occurs as a result of passive indifference. Defendants' … removal of architectural barriers does not eliminate the possibility of future violations, when the requirements of the ADA have been well publicized for many years. The requirements of the ADA have not remained fixed, and it is incumbent on Defendants to take note of the ADA's evolving requirements. In this case, Defendants took no action to comply with current requirements until after this case was filed. The risk remains that Defendants will resume the challenged conduct after this case is dismissed." *Nat'l All. For Accessability, Inc. v. McDonald's Corp.*, 8:12-CV-1365-T-17TBM, 2013 WL 6408650, at *6–7 (M.D. Fla. Dec. 6, 2013). In *McDonald's*, the Court held, "While some aspects of this case may have become moot, the Court finds that, at a minimum, the scope of an injunction directed to maintenance and future compliance remains at issue."

This Honorable Court has previously addressed the issue of mootness in *Caplan v. Amigo Food Store,* Case No. 17-cv-61440-WPD (S.D.Fla November 28, 2017) [DE 22]. Directly on point, in *Amigo* this Honorable Court explained:

> [E]ven assuming that Defendants had remedied the ADA violations, their mootness argument would nonetheless fail because Defendants fail to meet the criteria for voluntary cessation articulated in *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir 2007).
>
> Under the voluntary-cessation doctrine, a court must evaluate a defendant's assertion that the case is moot because the offending behavior has ceased by analyzing three factors: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate

suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely*, 505 F.3d at 1184.

Here, an evaluation of three factors weighs against the finding of mootness. There is insufficient evidence in the record as to whether Defendants' alleged noncompliance with the ADA at the time of the July 20, 2017 filing of the Complaint was isolated or unintentional as opposed to a continuing and deliberate practice. Thus, the Court will not give this factor weight either towards or against a finding of mootness. As to the second factor, Defendants admit that they were unaware of these alleged ADA violations until Plaintiff's suit. *See* [DE 12] at p. 3. It is clear that the remedial actions taken by Defendants came as a direct result of Plaintiff's filing suit. *See Nat'l All. For Accessability, Inc. v. McDonald's Corp.*, 2013 WL 6408650, at *6 (M.D. Fla. Dec. 6, 2013) ("The record is devoid of any evidence that Defendants acted to comply with the Accessibility Standards before suit was filed. Given that Defendants' cessation of the alleged violations took place only after suit was filed, the Court finds that Defendants' compliance is more closely related a desire to short-circuit litigation than to a genuine change of heart."). As to the third factor, there is nothing in the record to indicate that Defendants, in purportedly removing the barriers, acknowledged liability for the alleged ADA violations. Accordingly, weighing the three *Sheely* factors together makes it clear that this case is not moot.

Similarly, in the instant action Defendants fail to meet the criteria for voluntary cessation articulated in *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir 2007). As to the first factor, Defendants have been in business at the location at issue in this action since at least 1995. Defendants have owned the property since at least 2000. Thus, Defendants have been discriminating against disabled individuals with discriminatory ADA barriers for almost twenty to twenty-five years which can hardly be considered an isolated incident. As to the second factor, it is clear that any remedial actions taken by Defendants came as a direct result of Plaintiff's filing suit. Given that Defendants' cessation of the alleged violations took place only after suit was filed the Court should find that Defendants' compliance is more closely related to a desire to short-circuit litigation than to a genuine change of heart. As to the third factor, there is nothing in the record to indicate that Defendants, in purportedly removing the barriers, acknowledged liability for the alleged ADA violations. In fact, the opposite is true. Defendants denied the violations in the Answer, denied the violations in their discovery responses, threatened Plaintiff

with Rule 11 motions although the property was still not compliant, allegedly performed modifications while supposedly being out of the country, and not once acknowledged liability for the violations. As in *Amigo*, this Honorable Court should find that this case is clearly not moot.

### IV. CONCLUSION

Defendants' Motion should be denied. Simply put, neither the law nor the facts support entry of summary judgment for Defendants. As Plaintiff has presented, Defendants have not met the highly stringent standard for mootness in a private voluntary cessation case.

Respectfully submitted,

By: *Ronald Stern*
Ronald E. Stern, Esq.
Florida Bar No. 10089
THE ADVOCACY LAW FIRM, P.A.
1250 East Hallandale Beach Blvd.
Suite 503
Hallandale Beach, Florida 33009
Telephone:   (954) 639-7016
Facsimile:   (954) 639-7198
Attorney for Plaintiff, RENZO BARBERI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:19-cv-61143-WPD

RENZO BARBERI,

       Plaintiff,

vs.

MASQUERADE COSTUMES INC., a Florida Profit Corporation, LEONARD B. RAPP and INDEE L. RAPP, Individuals,

       Defendant(s).
_____/

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on this 7th day of October, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, corporations, or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or Via U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *Ronald Stern*
Ronald E. Stern, Esq.
Florida Bar No. 10089
THE ADVOCACY LAW FIRM, P.A.
1250 East Hallandale Beach Blvd.
Suite 503
Hallandale Beach, Florida 33009
Telephone: (954) 639-7016
Facsimile: (954) 639-7198
Attorney for Plaintiff, RENZO BARBERI

16